**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GILBERT CASTILLO, JR. individually and on behalf of a class of similarly situated individuals, | CIVIL ACTION |
|     Plaintiff, | Case No. 1:21-cv-02298 |
| v. | |
| TRANS UNION, LLC, | JURY TRIAL DEMANDED |
|     Defendant. | |

## CLASS ACTION COMPLAINT

NOW COMES GILBERT CASTILLO, JR. ("Plaintiff") by and through his undersigned attorney, and files the follow Civil Action against Defendant TRANS UNION, LLC pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*:

### Parties, Jurisdiction and Venue

1.    Defendant TRANS UNION, LLC ("Defendant" or "TransUnion") is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois.

2.    TransUnion's Illinois based registered agent is Illinois Corporation Service, 802 Adlai Stevenson Dr., Springfield, IL 62703.

3.    TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's creditworthiness, credit standing, and credit capacity on a nationwide basis, including the regular conduct of credit reporting and the handling of disputes for residents of in the States of Illinois and California.

4.    Plaintiff is a citizen of and resides in the state of California.

1

5.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction of this Civil Action because this Civil Action has been brought pursuant to 15 U.S.C. §1681 *et seq.*, the Fair Credit Reporting Act ("FCRA").

6.     Pursuant to 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which  [*5] any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

7.     Venue is proper in this judicial district pursuant to Section 1391(b) because TransUnion, the sole Defendant in this actions, resides in this judicial district, has the capacity to sue and be sued in this District and is otherwise subject to this Court's personal jurisdiction with respect to the complained of conduct. Further, upon in formation and belief, Defendant's response to Plaintiff's various dispute letters took place within this judicial district.

8.     Personal jurisdiction exists relative to Defendant because Defendant has sufficient business contacts within the State of Illinois and this judicial district "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010) (citations and internal quotations omitted). Further, in addition to Defendant's actual physical presence in this judicial distinction, the sheer scope of its business operations demonstrates "continuous and systematic" contacts with this forum that are "sufficiently extensive and pervasive[.]" *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

## II. Background Allegations Regarding the FCRA

9.    The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

10.    The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

11.    If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

12.    Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b) and is a natural person who was harmed by TransUnion conduct in violation of the FCRA.

13.    Defendant TransUnion is a "person" as defined by 15 U.S.C. §1681a(b) and is "consumer reporting agency" as defined by 15 U.S.C. §1681a(f). Defendant is also a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

14.    At all times relevant, Plaintiff's credit reports were "consumer reports" as that term is defined by §1681a(d).

15.    DISCOVER FINANCIAL SERVICES, INC. ("Discover") is a "furnisher" of "information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

### III. Additional Factual Allegations

16.     Starting in or around 2018, Discover was furnishing information to Defendant relative to consumer based credit card debt that Discover claims that Plaintiff incurred (hereafter the "Subject Debt").

17.     Prior to July 5, 2018, Plaintiff disputed the Subject Debt to Discover.

18.     As a result of Plaintiff's communications with Discover, on or about July 5, 2018, Discover agreed to delete the Subject Debt.

19.     On July 5, 2018, Discover wrote a letter to Plaintiff where Discover's letter stated that it was going to request that the Subject Debt be removed from Plaintiff's credit file where Discover's letter said the following:

> **As a result of this investigation, we have updated your Credit Bureau Report to reflect the following change(s):**
>
> **Requested Removal of tradeline from your credit file.**

20.     Defendant continued to report the Subject Debt on Plaintiff's credit report despite the representations contained in Discover's July 5, 2018 letter.

21.     As a result of Defendant continuing to report the Subject Debt in contravention of Discover's representation, Plaintiff sent three dispute letters to Defendant disputing the Subject Debt dated July 26, 2018, September 2, 2018 and November 25, 2018.

### A.  Plaintiff's July 26, 2018 Dispute Letter to Defendant

22.     On or about July 26, 2018, Plaintiff mailed a dispute letter to Defendant. The first page of July 26, 2018 dispute letter stated as follows:

> I dispute the following credit accounts. There are these credit accounts on my credit report that are reporting in accurately.

23.     The first page of July 26, 2018 dispute letter states that "[t]he credit accounts I speak of are as follows" wherein the July 26, 2018 dispute letter identifies

the Subject Debt as, "Discover Financial Services", with account number, "601120884568XXXX" (the "XXXX" marks were included in the original letters, hereafter the "Discover Account Number").

24.     Page of one Plaintiff's July 26, 2018 dispute letter also states in part:

> This information [referring to various accounts, including the Discover Account Number] needs to be verified because it is not accurate and is damaging.

25.     Next to the Discover Account Number, the first page of Plaintiff's July 26, 2018 dispute letter state "**\*Company requested removal**". The asterisk (**\***) before the word "Company" leads to a reference to the Subject Debt on page two of Plaintiff's July 26, 2018 dispute letter.

26.     Page two of the letter that was sent on July 26, 2018 states in part:

> In regards to the Discover Card [S]ervices account mentioned above[,] *Discover Card specifically sent me a letter just 1 week ago (included below) stating they "REQUESTED REMOVAL OF THE TRADELINE FROM CREDIT FILE".
>
> According to the FCRA the [Discover Card [S]ervices account] must be deleted [i]f you cannot fully and accurately verify this information. If you do not delete the [Discover Card [S]ervices account] I want to know complete verification as stated below on exactly your method of doing so.

27.     Page four of Plaintiff's July 26, 2018 dispute letter contained an image of Discover's letter dated July 5, 2018, where, as alleged in Paragraph 19, Discover said it was going to instruct the CRAs to delete the Subject Debt.

28.     The subject image identified the last four digits of the Subject Account.

29.     Plaintiff's dispute letter that was sent on July 26, 2018 was scanned by TransUnion into its database of dispute letters on July 30, 2018.

**B.  Plaintiff's September 2, 2018 Dispute Letter to Defendant**

30.     On or about September 2, 2018, Plaintiff mailed a second dispute letter to Defendant. Page of one Plaintiff's September 2, 2018 dispute letter states:

> I am writing to you to inform you of incorrect information on the credit report at your company.
>
> I dispute the following credit accounts. There are these credit accounts on my credit report that are reporting inaccurately. The credit accounts I speak of are as follows [listing the subject Discover Account Number].

31.     Below the above quotation, the first page of Plaintiff's September 2, 2018 dispute letter identifies a "Discover Financial Services" account followed by the Discover Account Number.

32.     Next to the Discover Account Number, page one of Plaintiff's September 2, 2018 dispute letter indicates: "*Company requested removal". The asterisk (*) before the word "Company" leads to a reference to the Subject Debt on page two of Plaintiff's September 2, 2018 dispute letter.

33.     Page of one Plaintiff's September 2, 2018 dispute letter goes on to state:

> You stated in my previous demand for production of the above accounts that each of these items have been verified. Although you ignored my request for production of documents/contracts on each account.
>
> It is critical that you require them to produce [documents/contracts] because it shows no contract with them nor account and also no agreed upon terms of the said contract[.]

34.     Page of one Plaintiff's September 2, 2018 dispute letter stated that because Defendant did "not comply with my former request" to remove the Subject Debt, Plaintiff asked Defendant to identify "your method of verification which I would now require a response in 15 days."

35.     Page of one Plaintiff's September 2, 2018 dispute letter also warned Defendant that if and/or when it could not verify the Subject Debt "then by law it is to be removed from my credit file."

36. Page one of Plaintiff's September 2, 2018 dispute letter reminded Defendant "If you think [you] are in compliance or not, I need complete verification of [the Discover Account] and the procedure you used to do so."

37. Page one of Plaintiff's September 2, 2018 letter also states in part:

> This information [referring to various accounts, including the Discover Account Number] needs to be verified because it is not accurate and is damaging.

38. Page two of Plaintiff's September 2, 2018 dispute letter states in part:

> In regards to the Discover Card [S]ervices account mentioned above[,] *Discover Card specifically sent me a letter just 4 weeks ago (attached below) stating they "REQUESTED REMOVAL OF THE TRADELINE FROM CREDIT FILE". You have not done that nor have [Discover Card Services] so I require a production of their contract as well.

39. Page four of Plaintiff's September 2, 2018 dispute letter contained an image of Discover's letter dated July 5, 2018, where, as alleged in Paragraph 19, Discover said it was going to instruct the CRAs to delete the Subject Debt.

40. The subject image identified the last four digits of the Subject Account.

41. Plaintiff's dispute letter that was sent on September 2, 2018 was scanned by TransUnion into its database of dispute letters on September 11, 2018.

**C. Plaintiff's November 25, 2018 Dispute Letter to Defendant**

42. On or about November 25, 2018, Plaintiff mailed a third dispute letter to Defendant. Page of one Plaintiff's November 25, 2018 dispute letter states:

> This is yet another letter to you letting you know that I am writing to inform you of incorrect information on the credit report at your company and you are in violation as you have not done anything about it nor verified your investigation.
>
> I dispute the following credit accounts. There are these credit accounts on my credit report that are reporting inaccurately. The credit accounts I speak of are as follows [listing the subject Discover Account Number].

43.     Below the above quotation, the first page of Plaintiff's November 25, 2018 dispute letter identifies a "Discover Financial Services" account followed by the Discover Account Number. Next to the Discover Account Number, page one of Plaintiff's November 25, 2018 dispute letter indicates: "company requested removal below".

44.     Page one of Plaintiff's November 25, 2018 dispute letter also reminded Defendant that Discover had sent Plaintiff a letter stating that Discover had "REQUESTED REMOVAL OF TRADELINE FROM CREDIT FILE".

45.     Page one of Plaintiff's November 25, 2018 dispute letter went on to state that "[t]he Discover Card account needs to be deleted immediately . . . because it is not accurate and is damaging."

46.     Page one of Plaintiff's November 25, 2018 dispute letter went on to state "[i]f/when you cannot verify this information then by law it is to be removed from my credit file or report the reason why it is not."

47.     Page three of Plaintiff's November 25, 2018 dispute letter contained an image of Discover's letter dated July 5, 2018, where, as alleged in Paragraph 19, Discover said it was going to instruct the CRAs to delete the Subject Debt.

48.     The subject image identified the last four digits of the Subject Account.

49.     This Civil Action is being brought within two year of Plaintiff learning of Defendant's violations of the FDCRA. In particular, within the last year, Plaintiff, by and through his counsel, attempted to cause Defendant to properly report the Subject Debt by deleting the Subject Debt – just as Discover promised it would do. During Plaintiff's counsel's investigation, Plaintiff learned of Defendant's various violations of the FCRA.

## IV. Summary of Defendant's Unlawful Conduct

50.     Defendant failed to properly scan and archive images of Plaintiff's dispute letters where the dispute letters contained an image of Discover's July 5, 2018 letter which stated as follows:

> **As a result of this investigation, we have updated your Credit Bureau Report to reflect the following change(s):**
>
> **Requested Removal of tradeline from your credit file.**

51.     If Defendant could not read or decipher the image of Discover's July 5, 2018 letter, Defendant still had enough information for it to process Plaintiffs' various dispute letters.

52.     Rather than remove the Subject Debt from Plaintiff's credit report, Defendant continued to report the Subject Debt on Plaintiff's credit report – thus harming Plaintiff in violation of the FCRA – where Discover's July 5, 2018 letter clearly indicated that it intended to delete the Subject Debt.

53.     If Defendant could not read or decipher the image of Discover's July 5, 2018 letter, and needed further information from Plaintiff (such as another copy of Discover's July 5, 2018 letter), Defendant should have contacted Plaintiff and asked for another copy of the Discover's July 5, 2018 letter.

54.     Instead of contacting Plaintiff to obtain another copy of the Discover's July 5, 2018 letter, Defendant continued to report the Subject Debt on Plaintiff's credit report – thus harming Plaintiff in violation of the FCRA – where Discover's July 5, 2018 letter clearly indicated that it intended to delete the Subject Debt.

55.     If Defendant could not read or decipher the image of Discover's July 5, 2018 letter, and did not have enough information to understand the nature of Plaintiff's dispute letters relative the Subject Debt, Defendant should have contacted Plaintiff for further information.

56. Instead of contacting Plaintiff to obtain further information, Defendant continued to report the Subject Debt on Plaintiff's credit report – thus harming Plaintiff in violation of the FCRA – where Discover's July 5, 2018 letter clearly indicated that it intended to delete the Subject Debt.

57. If Defendant needed additional information to confirm, rule out or otherwise identify the Discover Account Number and/or the Subject Debt, Defendant should have contacted Plaintiff for further information.

58. Rather than contact Plaintiff, Defendant continued to report the Subject Debt on Plaintiff's credit report – thus harming Plaintiff in violation of the FCRA – where Discover's July 5, 2018 letter clearly indicated that it intended to delete the Subject Debt.

59. On information and belief, Defendant did not provide Discover with any of Plaintiff's dispute letters.

60. On information and belief, Defendant did contact Discover relative to Plaintiff's dispute letters and did not otherwise provide Discover with an accurate summary of Plaintiff's dispute relative the Subject Debt.

61. The facts plausibly suggest that Defendant repeatedly *ignored* Plaintiff's dispute letters in violation of the FCRA because Defendant did not delete the Subject Debt despite Plaintiff explaining to Defendant that Discover had indicated that it was going to ask it to delete the Subject Debt as a tradeline.

62. The facts plausibly suggest that Defendant repeatedly *ignored* Plaintiff's dispute letters in violation of the FCRA because Defendant did not properly validate the Subject Debt by providing Plaintiff with any account records substantiating the basis for the continued reporting of the Subject Debt.

63. Further, Defendant repeatedly *ignored* Plaintiff's dispute letters in violation of the FCRA because Defendant did not inform Plaintiff of the reason or reasons why it continued to report the Subject Debt as a tradeline and did not identify documents or otherwise provide documents to Plaintiff to support why it continued to report the Subject Debt as a tradeline.

64. Despite Plaintiff sending three dispute letters directly to where at least two of the letters contained an image of Discover's July 5, 2018 letter, Defendant willfully and negligently repeatedly failed to perform a reasonable investigation and/or reinvestigations of the Disputed Debt as required by the FCRA and thereafter Defendant continued to misreport the Subject Debt on Plaintiff's credit report.

65. A reasonable investigation by Defendant would have confirmed the veracity of Plaintiff's disputes.

66. Alternatively, if Defendant had properly investigated Plaintiff's dispute, it would have permanently deleted the Subject Debt.

67. The continued wrongful reporting of the Subject Debt by Defendant harmed Plaintiff's credit score when Plaintiff applied for credit.

68. Despite Plaintiff's efforts, Defendant willfully and negligently repeatedly failed to perform a reasonable investigation and/or reinvestigations of the Disputed Debt as required by the FCRA.

69. Had Defendant reviewed the information provided by Plaintiff, Defendant should have corrected the inaccurate designation of the Subject Debt and transmitted updated credit information.

70. Instead, Defendant wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation. Defendant's failure to conduct

a reasonable investigation of the accuracy of the reporting of the Subject Debt shows a reckless disregard for Plaintiff's rights under the FCRA.

71.     Defendant's wrongful reporting of the inaccurate information on Plaintiff's credit file was patently inaccurate and creates a materially misleading impression that the Subject Debt was owed to Discover when this was not the case. Defendant's conduct resulted in Plaintiff suffering from frustration, anxiety and emotional distress. Defendant's conduct and its continuously erroneous reporting of the Subject Debt created a false and damaging image of Plaintiff with regard to credit furnishers and prevented Plaintiff from obtaining favorable financing. Plaintiff also incurred unnecessary postage costs and the loss of his personal time in preparing and sending dispute letters to Defendant.

72.     Defendant's conduct also prevented Plaintiff from improving his credit score and regaining his good credit standing by willfully and negligently failing to correct the misreporting of the Subject Debt in contravention of the obligations imposed by the FCRA.

73.     Concerned about the violations of his rights and invasion of privacy, Plaintiff sought the assistance of counsel to remedy Defendant's inaccurate and derogatory credit reporting with regard to the Subject Debt. Plaintiff retained the undersigned to render legal service related to the Subject Debt and in particular for the purposes of causing Defendant to delete the Subject Debt.

74.     To recap, as a result of the above conduct, actions, and inactions of Defendant, which Plaintiff learned of approximately one year ago, Plaintiff has suffered the following damages:

      a. expenses and time incurred curing and remediating and disputing the Subject Debt;

      b. out-of-pocket mailing expenses;

    c.   time and money expended talking and meeting with his retained attorney;

    d.   time spent tracking the status of his disputes and monitoring his credit reports;

    e.   mental anguish, frustration and aggravation associated with disputing Subject Debt;

    f.   the loss of credit and the loss of credit opportunities;

    g.   injury to reputation and credit rating; and

    h.   reduced purchasing power resulting from a reduced credit line.

75.    TransUnion knew or should have known that the inaccurate report of the Subject Debt in Plaintiff's credit files would have a significant adverse effect on Plaintiff's credit worthiness.

**<u>Count I – Individual Claim versus TransUnion for Violations of the FRCA</u>**

76.    Plaintiff, in his individual capacity, restates and realleges Paragraphs 1-75 against Defendant TransUnion as though fully set forth herein.

77.    Plaintiff provided TransUnion with all relevant information and documentation in his three letters that disputed the reporting of the Subject Debt.

78.    Despite receiving three credit disputes from Plaintiff, TransUnion continued to process and issue credit reports containing inaccurate and materially misleading information regarding the Subject Debt.

79.    A simple review of the relevant documents submitted by Plaintiff would have confirmed to TransUnion that the Subject Debt should not have been included on Plaintiff's credit report.

80.    TransUnion violated 15 U.S.C. § 1681i(a)(2)(A) and 15 U.S.C. § 1681i(a)(2)(B) by failing to provide Discover with all of the information that Plaintiff's dispute letters provided to TransUnion.

81.    As set forth above, Plaintiff's dispute of the Subject Debt was neither frivolous nor irrelevant.

82.     If Defendant believed that Plaintiff's dispute of the Subject Debt was frivolous or irrelevant, Defendant failed to comply with 15 U.S.C. § 1681i(a)(3)(B) which provides that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the agency."

83.     Defendant failed to comply with 15 U.S.C. § 1681i(a)(3)(C) which required any notice provided by Defendant to "include - (i)the reasons for the determination under subparagraph (A); and identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information."

84.     TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information regarding the dispute that it received from Plaintiff with regard to the his dispute of the Subject Debt.

85.     TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to delete or modify the inaccurate information relative to the Subject Debt where Section 1681i(a)(5)(A) provides in part that:

> [i]f, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall— (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation[[.]

15 U.S.C. § 1681i(a)(5)(A).

86.     Alternatively, TransUnion violated 15 U.S.C. § 1681i(a)(5)(B)(i) if it *reinserted* the Subject Debt based after initially deleting the Subject Debt based upon comments provided by Discover where Section 1681i(a)(5)(B)(i) provides that:

> [i]f any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

15 U.S.C. § 1681i(a)(5)(B)(i).

87. Alternatively, TransUnion violated 15 U.S.C. § 1681i(a)(5)(B)(ii) if it *reinserted* the Subject Debt based after initially deleting the Subject Debt based upon comments provided by Discover where Section 1681i(a)(5)(B)(ii) provides that:

> (ii) Notice to consumer
>
> If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency.
>
> (iii) Additional information
>
> As part of, or in addition to, the notice under clause (ii), a consumer reporting agency shall provide to a consumer in writing not later than 5 business days after the date of the reinsertion—
>
>> (I) a statement that the disputed information has been reinserted;
>>
>> *** ; and
>>
>> (II) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.

15 U.S.C. § 1681i(a)(5)(B)(ii).

88. TransUnion failed to comply with 15 U.S.C. §§ 1681i(a)(5)(C) and (D) which provide that:

> (C) Procedures to prevent reappearance
>
> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

15

> (D) Automated reinvestigation system
>
> Any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis shall implement an automated system through which furnishers of information to that consumer reporting agency may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file to other such consumer reporting agencies.

15 U.S.C. §§ 1681i(a)(5)(C) and (D).

89.    TransUnion failed to comply with 15 U.S.C. § 1681i(a)(6)(A) which provides that "[a] consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency."

90.    In particular, Defendant did not comply with Section 1681i(a)(6)(B)(iii) which provides that Defendant was required to mail Plaintiff (as he had requested in writing) of "a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency[.]"

91.    Defendant failed to comply with 15 U.S.C. § 1681i(a)(7) which requires "[a] consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description."

92.    Defendant failed to comply with 15 U.S.C. § 1681i(c) which provides as follows:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

16

15 U.S.C. § 1681i(c).

93.     Defendant failed to comply with Section 1681i(c) where Plaintiff's dispute was neither frivolous nor irrelevant.

94.     Despite actual knowledge that Plaintiff's credit files contained erroneous information relative to the Subject Debt, TransUnion misrepresented facts about Plaintiff's creditworthiness.

95.     By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

96.     Based upon Plaintiff's three dispute letters, including Plaintiff's reference to contents of Discover's July 5, 2018 letter, and information known by Plaintiff's counsel's investigation and research, it was TransUnion's regular business practice to report inaccurate credit information without taking the required investigatory steps to meaningfully review the information submitted by consumers relative to a disputed debt.

97.     For example, in other lawsuits, TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false information.

98.     Further, on information and belief, Defendant does not ensure that it makes high quality scans of dispute letters sent by consumers like Plaintiff, resulting in unclear images, which result in improper denials of disputes by consumers like Plaintiff.

99.     As stated above in Section IV, Plaintiff was severely harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court to enter the following relief in Plaintiff's favor and against Defendant TransUnion:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject accounts;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n, and $1,000.00 for each month of each of those violations that the misinformation was kept on Plaintiffs Credit report;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and\

g. Award any other relief as this Honorable Court deems just and appropriate

## Count II – Class Action Violations of the FCRA versus TransUnion

100. Plaintiff, on behalf of the below identified class members, restates and realleges the above Paragraphs 1-99 against Defendant TransUnion as though fully set forth herein.

101. Upon information and belief, TransUnion has acted in a similar manner to more than 40 putative class members who attempted to dispute debts that they did not owe to Discover (based upon Discover's unfulfilled promised to delete of consumers' debts) where TransUnion did not properly respond to the credit disputes lodged by putative class members.

102. TransUnion's misconduct through the failure to properly investigate the subject disputes (by merely replying on Discover's continued misreporting and ignoring documentation sent by the consumers) satisfy the elements of typicality, commonality, predominance and superiority.

103. Plaintiff's claims share common legal and factual issues with putative class members.

104. Plaintiff and his counsel will fairly and adequately represent the proposed class members who are defined as follows:

> All consumers who submitted disputes to TransUnion regarding a debt allegedly owed to Discover Financial Services ("Discover") where the consumers informed Transunion that Discover agreed in writing to delete the their credit card debts and TransUnion failed to adequately respond to the dispute as required by the FCRA and the debts remained on the consumers' credit reports as derogatory accounts.

105. Additionally, Plaintiff seek to represent a second class of consumers who are defined as follows:

> All consumers who submitted disputes to TransUnion regarding a debt allegedly owed to a credit card furnisher where the consumers informed Transunion that their credit card furnisher had agreed in writing to delete the their credit card debts and TransUnion failed to adequately respond to the dispute as required by the FCRA and the debts remained on the consumers' credit reports as derogatory accounts.

106. Plaintiff is represented by counsel who is well versed in consumer class actions and the prosecution and defense of consumer class action claims, including FCRA claims.

**WHEREFORE**, Plaintiff, on behalf of himself and putative class members, respectfully prays this Honorable Court for the following relief against Defendant TransUnion:

> a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject accounts;

a. Award class members statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n, and $1,000.00 for each month of each of those violations that the misinformation was kept on Plaintiffs Credit report;

c. Award class members punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

e. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands a jury trial**

Respectfully Submitted on behalf of
Plaintiff GILBERT CASTILLO, JR.
                                                          Date: 4/28/2021

*/s/ James C. Vlahakis*
James C. Vlahakis
SULAIMAN LAW GROUP, LTD.
2500 Highland Avenue Suite 200
Lombard, IL 60148
Direct:  (630) 581-5456
Fax (630) 575 - 8188
Email: jvlahakis@sulaimanlaw.com